

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESUS MENDOZA-GIL,                     )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )  No. 11 C 1924
                                        )
MICHAEL J. ASTRUE,                      )  Judge Ruben Castillo
COMMISSIONER OF SOCIAL                  )
SECURITY,                               )
                                        )
        Defendant.                      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jesus Mendoza-Gil brings this action pursuant to the Social Security Act ("the

Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of

the Social Security Administration ("SSA"), denying his application for disability benefits. (R.2,

Compl.) Presently before the Court is Plaintiff's motion for summary judgment. (R. 15, Pl.'s

Mot.) For the reasons stated below, the motion is denied.

### RELEVANT FACTS

Plaintiff was born on May 24, 1963, (A.R. 150)[1], and is a resident of Yorkville, Illinois.

(R. 2, Compl. ¶ 2.) He obtained a high school education in Mexico. (A.R. 54.) He has

previously worked as a machine operator, a material handler, and most recently as a bus boy at

Red Robin, a "fast-casual" restaurant. (A.R. 54-58, 214, 236, 147-148.) On May 22, 2008,

Plaintiff applied for a period of disability and disability insurance benefits pursuant to Sections

---

[1] Citations to (R.) refer to the record number that a document is assigned on the docket
for this case. Citations to (A.R.) refer to the administrative record of these proceedings, which
was filed as R. 14 on the docket.

416(i) and 423 of the Act. (A.R. 150.) Plaintiff's claim was denied on September 3, 2008.

(A.R. 93-97.) Plaintiff applied for reconsideration, but his request for reconsideration was

denied on October 24, 2008. (A.R. 98-101.) Thereafter, Plaintiff requested a hearing and a

hearing was held on August 10, 2009. (A.R. 124-139, 50-87.) On September 16, 2009, the

Administrative Law Judge ("ALJ") denied Plaintiff's request for a period of disability or

disability insurance benefits. (A.R. 22.)

## I.    Medical Evidence

Plaintiff alleges a disability as a result of injuries to his right and left shoulders, his left

elbow, and his back. (A.R. 213.) Plaintiff alleges that the symptoms caused by these

impairments, including an inability to lift heavy objects weighing more than 20 pounds, an

inability to bend down, and the constant pain in his back, limit his ability to work. (*Id.*) Plaintiff

further alleges that the onset of his symptoms is May 23, 2008.[2] (A.R. 86.)

In June 2003, Plaintiff injured his right shoulder while at work. (A.R. 148, 282-83.) In

October 2003, Plaintiff underwent rotator cuff surgery on his right shoulder. (A.R. 148, 279.) In

August 2004, Dr. Lenard LaBelle examined and cleared Plaintiff for full duty work because

Plaintiff had nearly full motion of his right shoulder. (A.R. 290.)

In June 2004, Plaintiff injured his left shoulder and lower back while at work. (A.R. 318,

326.) Plaintiff underwent rotator cuff surgery on his left shoulder on April 18, 2007. (A.R. 148,

570.) Between June 2004 and August 2006, Dr. Michael Treister frequently examined Plaintiff.

---

[2] In his application for disability insurance benefits, Plaintiff indicated that the onset date
for his alleged disability was April 18, 2007. (A.R. 150.) During the August 10, 2009 hearing,
however, Plaintiff, through his attorney, moved to amend the alleged disability onset date to May
23, 2008. (A.R. 86.) The ALJ granted Plaintiff's motion at the hearing. (A.R. 14-15.)

(A.R. 312-314.) During these visits, Dr. Treister noted that Plaintiff continued to experience pain in his shoulders and back, (A.R. 323, 330, 332, 338, 343, 350, 351), and that he had increased pain with prolonged sitting, standing, and walking. (A.R. 337, 344.) Dr. Treister recommended that Plaintiff not bend repetitively at the waist, that he not lift at or above the shoulder level, and that lifting be limited to 25 pounds. (A.R. 332.) Dr. Treister attempted to schedule surgery for Plaintiff's left shoulder in January 2005, but the surgery was not performed because it was not authorized by his former employer's workers' compensation carrier. (A.R. 336.)

On February 2, 2007, Plaintiff was examined by Dr. Hassan Moghadam, after being referred by his primary care physician, Dr. Hardeep Arora, for numbness and a tingling sensation in his left hand. (A.R. 148, 539.) Dr. Moghadam performed a nerve conduction study which revealed a left ulnar nerve entrapment at the elbow. (A.R. 540.) In September 2007, Plaintiff underwent surgery on his left to move the pinched nerve. (A.R. 148, 570.) Plaintiff received physical therapy for his left shoulder injury from May 2007 until October 2007, (A.R. 371-72, 427), and for his elbow injury from November 2007 until January 2008. (A.R. 441, 463.)

Between August 2007 and April 2008, Dr. Thomas McGivney examined Plaintiff several times for his back injury (A.R. 518-33.) On August 21, 2007, Dr. McGivney noted that a Magnetic Resonance Imaging ("MRI") scan performed on Plaintiff in 2004 showed some mild degenerative change in Plaintiff's lower back, but no significant abnormalities. (A.R. 518.) Dr. McGivney suggested that an up-to-date MRI be conducted. (*Id.*) On October 27, 2007, Dr. Arora conducted an MRI of Plaintiff's lumbar spine. (A.R. 519.) The 2007 MRI revealed multi-level slight disk bulging without a significant spinal canal or neural foramina stenosis, and mild

spondylosis. (*Id.*) On December 4, 2007, Dr. McGivney examined Plaintiff again and noted that

his most recent MRI scan revealed a left-sided facet cyst, but that Plaintiff reported pain on his

right side. (A.R. 522.) Dr. McGivney did not believe there were "enough concordant subjective

complaints with objective findings [to] justify aggressive treatment." (*Id.*) Dr. McGivney

recommended a referral to pain management and placed Plaintiff on the following restrictions: no

bending, stooping, or lifting over 20 pounds. (*Id.*) Plaintiff received four physical therapy

sessions for his lower back in January 2008. (A.R. 466.) During Plaintiff's initial evaluation for

his physical therapy, it was noted that Plaintiff may have had a right lumbar strain and that

Plaintiff's symptoms were consistent with a lower back problem. (A.R. 470-71.) Upon the

conclusion of these sessions, Plaintiff reported that his lower back felt better. (A.R. 466.)

On December 20, 2007, Dr. Ramesh Bathina examined Plaintiff for his lower back pain,

upon a referral from Dr. McGivney. (A.R. 504-506.) Dr. Bathina diagnosed Plaintiff with disc

degeneration on his back and ordered Plaintiff to receive epidural steroid injections for pain

relief. (A.R. 506.) In February 2008, Dr. McGivney examined Plaintiff again and noted that

although Plaintiff was complaining of right leg pain, his MRI had not shown any abnormalities at

that level. (A.R. 526.) In March and April 2008, Plaintiff received three epidural steroid

injections from Dr. Bathina. (A.R. 507-513.) Thereafter, in April 2008, Dr. McGivney noted

that Plaintiff had not seen any improvement after receiving the three epidural steroid injections.

(A.R. 532.) While Dr. McGivney did not believe that Plaintiff was a surgical candidate, he did

believe that Plaintiff's work restrictions of no lifting over 20 pounds, no repetitive bending, and

no stooping from floor to waist, were permanent restrictions. (*Id.*) During a follow-up

examination, Dr. Bathina also noted that Plaintiff had not obtained pain relief and prescribed

Plaintiff Tramadol. (A.R. 513.)

A March 8, 2008 assessment conducted by a Certified Functional Assessment Specialist, Alyssa Emanuelson, found that Plaintiff could work for approximately seven to eight hours with the following limitations on sitting, standing, and walking: Plaintiff could sit for six to eight hours for 60 minute durations, with regular breaks; Plaintiff could stand for three to four hours for 30 minute durations with regular breaks; and Plaintiff could walk for three to four hours of frequent, moderate distances. (A.R. 480.)

On June 9, 2008, in response to a medical questionnaire from the SSA, Dr. Arora noted that Plaintiff's physical back pain limited heavy activities and that Plaintiff was "unable to do heavy work." (A.R. 548, 551.) Dr. Arora further noted that he had diagnosed Plaintiff with anxiety and prescribed Plaintiff with Xanax. (A.R. 551.)

On August 18, 2008, Dr. Ravikiran Tamragouri conducted a limited evaluation of Plaintiff's right and left shoulder, left elbow, and back problem. (A.R. 570.) Dr. Tamragouri tested Plaintiff's range of motion and found that Plaintiff had residual pain and restrictions from the bilateral shoulder rotator cuff injuries. (A.R. 570-71.) The range of motion results indicated that Plaintiff had limited range of motion in his shoulders and elbows. (*Id.*) With respect to Plaintiff's back, the results indicated that Plaintiff had slightly limited range of motion in his lumbar spine with respect to hip flexion, extension, and left and right lateral bending. (A.R. 571.)

On August 28, 2008, Dr. Virgilio Pilapil, a medical consultant for Disability Determination Services ("DDS"), reviewed Plaintiff's medical records and concluded that Plaintiff's "statements regarding his difficulties with lifting, squatting, bending, reaching,

walking, sitting, and kneeling are partially credible in light of the overall evidence." (A.R. 580.)

Dr. Pilapil further concluded that while Plaintiff's medical impairments could "be expected to

produce some limitations in function . . . the extent of the limitations described by the [Plaintiff]

in terms of no repetitive bending, squatting, wal[k]ing ½ mile, no sitting for more than 1 hour,

and no kneeling more than 5 minutes, exceeds that supported by the objective medical findings."

(*Id.*)

On October 22, 2008, after Plaintiff requested that his disability denial be reconsidered,

Dr. Terry Travis reviewed Plaintiff's medical records at the request of DDS, and affirmed Dr.

Pilapil's assessment, with some revisions. (A.R. 582.) Specifically, Dr. Travis stated that while

the statement of evidence from the August 28, 2008 determination was incorporated by reference

(except as modified), the inferences, findings, and conclusions based thereon were not

incorporated by reference. (A.R. 583.) Dr. Travis then concluded that Plaintiff's "statements

regarding alleged impairments are credible and consistent with the objective medical findings

and the limitations indicated in this functional assessment." (*Id.*)

## II.     ALJ Hearing

A hearing was held on August 10, 2009. (A.R. 50-87.) Plaintiff appeared in person and

was represented by his attorney, George W. Weber. (A.R. 52.) An interpreter was provided to

translate testimony from Spanish to English and from English to Spanish. (A.R. 56-57.)

Additional testimony was heard from a vocational expert, Frank Mendrick. (A.R. 53-56, 61, 76-

86, 138.) Also present at the hearing was Plaintiff's friend, Irene Quintana. (A.R. 52, 212.)

The ALJ first solicited testimony from Mr. Mendrick regarding Plaintiff's vocational

profile in terms of age, education, and work experience. (A.R. 54-56.) Mr. Mendrick testified

that he would classify Plaintiff as a younger individual. (A.R. 54.) He also testified that Plaintiff

had a high school degree from Mexico and that he spoke some English, but that he could neither

read or write English. (A.R. 54-55.) He next testified that in 1996 Plaintiff worked as a machine

operator, which he classified as unskilled and light work. (A.R. 55.) From 1997 until 2008,

Plaintiff was a material handler which Mr. Mendrick classified as unskilled labor, unless the

person uses a forklift, performed at a medium level of exertion. (*Id.*) Mr. Mendrick testified that

he did not know whether Plaintiff had used a forklift while he was a material handler. (*Id.*)

Finally, Mr. Mendrick testified that Plaintiff worked as a bus boy for approximately four months

and that this type of work was classified as unskilled and light work. (A.R. 55.) Mr. Mendrick

did not believe such work would constitute gainful employment and also testified that if Plaintiff

had been clearing dishes from tables, then the work would have required a medium level of

exertion. (A.R. 56.)

The ALJ next questioned Plaintiff about his most recent position as a bus boy at Red

Robin. (A.R. 57.) Plaintiff testified that it was his job to clear the tables when diners were

finished eating. (A.R. 58.) To do so, Plaintiff would carry a plastic tub with him to the tables

that needed to be cleared, he would reach across the tables to pick up dishes, and he would then

place those dishes in the plastic tub. (A.R. 58-59.) Plaintiff would usually clear one table at a

time. (A.R. 59.) Additionally, Plaintiff would wipe the tables and chairs, and sweep the floors.

(*Id.*) Plaintiff further testified that it was difficult for him to carry the plastic tub, to reach and

pick-up the plates from tables, to reach and to clean, and to get down on his knees or squat to

clean. (*Id.*) Plaintiff also testified that he was required to dump the smaller garbage containers

by lifting the plastic bags out of the containers with both hands and throwing them into the

dumpster; this too was difficult for him. (A.R. 60-61.) When asked why these tasks were difficult, Plaintiff testified it was because he had to bend and use his hands, back, and shoulders. (A.R. at 61.) Upon hearing Plaintiff's description of his work, Mr. Mendrick testified that he would classify this type of work as medium. (*Id.*) Plaintiff also testified that he worked about four to five hours per day, mostly during the afternoon shifts–one of the busiest shifts at the restaurant. (A.R. 61-62.) Finally, Plaintiff testified that he stopped working at Red Robin because he could no longer support the pain in his arms, his back, and shoulders. (A.R. 62.)

Upon questioning by his attorney, Plaintiff testified that he had pain in his back, his shoulders, and his left elbow. (*Id.*) Plaintiff testified that he hurt his right shoulder at work, that he had surgery on his right shoulder in 2003, but that he continued to experience pain in that shoulder after the surgery. (A.R. 63.) Then, in June 2004, Plaintiff hurt his left shoulder and his back. (A.R. 63-64.) Despite these injuries, Plaintiff continued to work until April 2007, when he had surgery on his left arm and elbow. (A.R. 64.) Plaintiff testified that after the 2007 surgeries, he continued to have pain. (A.R. 65.) Plaintiff testified that he had physical therapy for his shoulders and that he received injections for his back. (*Id.*)

Plaintiff next testified that he could not reach over his head, in front of him, or to the side, with his right shoulder because it hurt too much. (A.R. 66.) He explained that while he was working at Red Robin he felt a lot of pain while reaching, but that he had to reach because he had to work. (*Id.*) Plaintiff also testified that he experienced pain when raising his left shoulder up higher than chest- and shoulder-level. (*Id.*) Plaintiff then testified that he also had pain in his left elbow. (*Id.*) Although he received surgery on his elbow for a pinched nerve, he still felt a lot of pressure in his hands. (A.R. 67.) Plaintiff next testified that he had pain in his lower back, that

he felt a burning sensation and that his back felt like it was going to break. (*Id.*) Plaintiff testified that he feels this pain every day, that activity makes the pain worse, and that the pain runs down his leg to his feet. (A.R. 68.) While Plaintiff was working at Red Robin, his back and leg were very bad and he could not sleep at night because of the pain. (*Id.*)

Plaintiff's attorney then questioned Plaintiff about his living situation and his daily activities. (A.R. 69-71.) Plaintiff testified that he could only sit for 10 to 20 minutes and that he could walk for approximately 30 to 45 minutes. (A.R. 70.)

Next the ALJ questioned Plaintiff about his height and weight and recent physical therapy. Plaintiff testified that he was 5'11" and weighed 215 pounds. (A.R. 73.) Plaintiff also testified that he received physical therapy for his arms and left elbow, but that exercises for his lower back had not been recommended to him. (A.R. 74.) Plaintiff also confirmed that he had started working at Red Robin more than one year after his last physical therapy session. (A.R. 75.) The ALJ asked Plaintiff whether he was taking medication for depression, and Plaintiff confirmed he was. (*Id.*)

Finally, the ALJ asked Mr. Mendrick to consider, hypothetically, an individual with Plaintiff's age and education, "limited to lifting, carrying, pushing, and/or pulling with the upper extremities no more than 20 pounds occasionally, 10 pounds frequently, . . . [who] can sit, stand, and/or walk six hours in an eight hour work day . . . needs to avoid climbing ropes, ladders, or scaffolds[,] needs to avoid more than occasionally climbing stairs, bending or stooping; crouching, crawling, or kneeling; should avoid reaching above shoulder level bilaterally; should avoid more than occasional Torquing motions with both upper extremities; should avoid working at unprotected heights," and who, if he were stationary, would reach for objects close to his body.

(A.R. 76-77.) Mr. Mendrick testified that someone with these characteristics could perform the jobs of a small product assembler, an inspector, and a bagger, for a total of 9,500 jobs within the six county Chicago metropolitan area. (A.R. 78.) In response to questions by Plaintiff's attorney, Mr. Mendrick testified that as a practical matter, these jobs would not be able to be performed by a person who had to alternate between sitting and standing. (A.R. 84.)

## III.    ALJ Decision

On September 16, 2009, the ALJ concluded that Plaintiff was not entitled to a period of disability or disability insurance benefits. (A.R. 22.) As an initial matter, the ALJ found that Plaintiff had met the disability insured status requirements of the Act on his amended alleged disability onset date of May 23, 2008, and that he continued to meet them at least through the date of the ALJ's decision. (A.R. 17.) The ALJ next conducted the five-step sequential analysis to determine whether Plaintiff was entitled to disability insurance benefits. (A.R. 15-16.)

First, the ALJ found that Plaintiff's work as a bus boy at Red Robin did not constitute substantial gainful activity, and therefore Plaintiff had not engaged in substantial gainful activity at any time material to the ALJ's decision. (A.R. 17.) The ALJ credited Plaintiff's allegations that he stopped working as a bus boy because the work was too physically demanding and also took into account the vocational expert's testimony that Plaintiff's work as a bus boy did not constitute substantial gainful activity.

Second, the ALJ found that Plaintiff had at least one severe medically determinable impairment. (*Id.*) Based upon Plaintiff's medical record, the ALJ was "convinced that the [Plaintiff] has residual limitations associated with injuries to both shoulders and to the left elbow; degenerative disc disease of the lumbar spine; and a depressive disorder associated with his

general medical condition." (*Id.*) The ALJ then noted that Plaintiff had testified at the August

10, 2009 hearing that he was 5'11" and weighed 215 pounds. (*Id.*) The ALJ then observed that

"[t]he broad-shouldered, sturdily built claimant exhibited a large, soft abdomen at the hearing,

consistent with deconditioning. Deconditioning is not a medically determinable impairment."

(*Id.*)

With respect to Plaintiff's mental health, the ALJ found that claimant's mental

impairments were not severe. (*Id.*) The ALJ noted that Plaintiff had sought mental health

intervention when he was most symptomatic and had responded positively to treatment. (A.R.

18.) Additionally, from a mental health standpoint alone, the ALJ found that the record did not

establish the "C Criteria" under Sections 12.04 or 12.06 of the listings. (*Id.*)

Third, the ALJ found that the combination of Plaintiff's physical and mental impairments

did not meet or equal any of the listed impairments contained within the Social Security

Regulations ("SSRs"). (*Id.*) Specifically, the ALJ found that Plaintiff did not have a spine

disorder under Section 1.04 as Plaintiff did not have the spinal cord or root compression required

by the listing. (*Id.*) The ALJ also found that while Plaintiff had impairments to his arms, he did

not have the ineffective use of his arms, nor did he have the inability to ambulate effectively as

required under Section 1.00B of the listings. (*Id.*)

Next, the ALJ found that Plaintiff's residual functional capacity ("RFC") enabled him to

perform a restricted range of light exertional work. (*Id.*) In making this determination, the ALJ

credited the opinions of the reviewing medical consultants to the DDS and found that those

opinions were consistent with the medical evidence. (*Id.*) Additionally, the ALJ found that as a

consequence of Plaintiff's impairments, Plaintiff "should avoid climbing ropes, ladders, or

scaffolds; avoid more than occasionally climbing stairs and ramps, bending, stooping, crouching, crawling, or kneeling; avoid reaching above should[er] level or significantly away from the body in any direction with both [arms]; avoid more than occasionally performing [torquing] motions with both [arms]; and avoid working at unprotected heights." (*Id.*)

The ALJ then observed that while Plaintiff had consistently alleged that he had pain in his lower back, left elbow, and both shoulders that affected his ability to work, he nevertheless "continued to work for his last, permanent employer despite ongoing and significant symptoms until his alleged disability onset date." (*Id.*) The ALJ further noted that although Plaintiff's former employer's workers' compensation carrier had authorized needed surgeries on Plaintiff's left shoulder and elbow, that carrier had not authorized surgery on Plaintiff's lower back. (A.R. 19.) The ALJ also noted that while Plaintiff perceived that the three epidural steroid injections failed to provide sustained relief, Plaintiff had not undergone a diagnostic evaluation in the year prior to the hearing due to a lack of finances or health insurance. (*Id.*) The ALJ then reviewed Plaintiff's medical records, which revealed that by April 15, 2008, Dr. McGivney had advised Plaintiff not to lift more than 20 pounds, and not to engage in repetitive bending or stooping from the floor to the waist. (*Id.*) The ALJ discussed the results of Plaintiff's MRI and also noted that "there is no documentation of lower extremity spasm or numbness." (*Id.*) Additionally, he noted that after Plaintiff's October 2007 MRI, Dr. McGivney ruled out back surgery as a viable treatment option for Plaintiff and that Plaintiff had been prescribed Tramadol after he did not obtain pain relief from the three epidural steroid injections. (*Id.*) Finally, the ALJ noted that although Plaintiff's "[r]ange of motion testing was limited in the shoulders and elbows, . . . there was only slight reduction in flexion, extension, and lateral bending of the spine–all of which are

12

effort dependent." (*Id.*)

The ALJ also reviewed Plaintiff's mental health records. (A.R. 19-20.) The ALJ noted that while a clinician had diagnosed Plaintiff with both major depression and an anxiety disorder, for which Plaintiff was prescribed medication, Plaintiff appeared to be stable as of his last documented visit with a mental health specialist. (A.R. 20.) The ALJ also took note of Dr. Arora's psychiatric report in which Dr. Arora noted that he had treated Plaintiff with Xanax since September 2006, but opined that Plaintiff was only precluded from doing heavy work due to his condition. (*Id.*)

Next, the ALJ observed that Plaintiff engaged in daily activities of cooking, cleaning, doing laundry, shopping, looking for jobs, and taking daily walks. (*Id.*) The ALJ further noted that the last physical therapy session Plaintiff attended was in February 2008, and that he had not been prescribed a home exercise program for his lower back. (*Id.*) The ALJ next observed that Plaintiff was "significantly deconditioned." (*Id.*) According to the ALJ, this "deconditioning [was] consistent with [Plaintiff's] testimony concerning his self-imposed restrictions upon sitting, standing, or walking." (*Id.*) The ALJ then concluded that he "[did] not credit the [Plaintiff's] allegations concerning the frequency and duration of intense symptoms associated with his established impairments." (*Id.*) Finally, the ALJ determined that Plaintiff was capable of working within the restrictions he had found. (*Id.*)

Fourth, the ALJ found that Plaintiff did not have the RFC to perform his past relevant work as a machine operator or material handler. (A.R. 21.) The ALJ relied upon Mr. Mendrick's testimony that Plaintiff could not be expected to meet the demands of any past relevant work. (*Id.*) Fifth, the ALJ assessed the plaintiff's age, education, work experience, and

RFC, and concluded that there are jobs in the national economy to which Plaintiff could adopt

and perform. (*Id.*) The ALJ relied upon Mr. Mendrick's testimony that an individual with

Plaintiff's vocational profile and RFC was capable of performing a wide variety of occupations at

the light, unskilled level, including the jobs of small product assembler, inspector, and bagger.

(A.R. 22.) Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the

Act. (*Id.*)

Plaintiff requested review of the ALJ's decision on November 12, 2009. (A.R. 6.) On

January 13, 2011, the Appeals Council denied Plaintiff's request for review, (A.R. 1-5), making

the ALJ's ruling the final decision of the Commissioner subject to judicial review. *Villano v.*

*Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). Thereafter, on March 20, 2011, Plaintiff filed this

action seeking judicial review by this Court. (R. 2, Compl.) In his complaint, Plaintiff requests

that his claim for a period of Disability and Disability Benefits be allowed, and that the SSA be

ordered to pay such benefits. (*Id.* ¶ 5.) Alternatively, Plaintiff asks this Court to remand the case

to the SSA for a fair hearing and award him court costs and reasonable attorney's fees. (*Id.*)

On July 29, 2011, Plaintiff filed a motion entitled, "Plaintiff's Motion for Summary

Judgment with Combined Memorandum in Support of a Motion to Reverse the Final Decision of

the Commissioner of Social Security." (R. 15, Pl.'s Mot.) Plaintiff argues that the ALJ failed to

properly analyze his testimony before finding him "not credible." (*Id.* at 10.)

## LEGAL STANDARDS

In reviewing the ALJ's decision, this Court determines whether the ALJ's factual

determinations are supported by substantial evidence and based on proper legal criteria. *Scheck*

*v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

"Substantial evidence may be less than the weight of the evidence, and more than a scintilla." *Id.*

(citations omitted). "Under this standard, the ALJ's decision, if supported by substantial

evidence, will be upheld even if an alternative position is also supported by substantial

evidence." *Id.* While an "ALJ is not required to mention every piece of evidence," he must

establish an "accurate and logical bridge" between the evidence and his conclusions. *Craft v.*

*Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *see also Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir.

2008). In reviewing the ALJ's conclusions, the Court "will 'conduct a critical review of the

evidence,' considering both the evidence that supports, as well as the evidence that detracts from,

the Commissioner's decision." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting

*Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is not the role of this Court, however,

to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own

judgment for that of the Commission." *Lopez*, 336 F.3d at 539 (quoting *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000)).

## ANALYSIS

A claimant is qualified to receive disability benefits if he is found to be disabled within

the meaning of the Act. 42 U.S.C. § 423(a)(1)(E); *Briscoe*, 425 F.3d at 351. A disability is

defined as "the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A); *see also Barnhart v. Walton*, 535 U.S. 212, 217-222 (2002) (discussing

definition at length and finding SSA's interpretation, that the term requires an inability to last 12

months, lawful). Under the Act, a claimant is considered to be under a disability only if his physical or mental impairments are of such severity that he is unable to do his previous work and cannot, when "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2). Additionally, to receive disability insurance benefits, a claimant must prove that he was disabled on or before the date his insured status expired. *Stevenson v. Chater,* 105 F.3d 1151, 1154 (7th Cir. 1997).

The SSRs provide a sequential five-step test for determining whether a claimant qualifies for disability benefits. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is performing a substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaging in a substantial gainful activity, the claimant is not disabled. *Id.* Second, the ALJ must consider whether the claimant has a severe medically determinable impairment, or combination of impairments, that meet a 12 month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Third, the ALJ must compare the claimant's impairment to the listing of impairments contained in the SSRs; if the claimant's impairment meets or equals a listed impairment and meets the 12 month duration requirement, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does not meet or equal a listed impairment, the ALJ must then assess a claimant's RFC. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(e). Fourth, the ALJ considers his assessment of a claimant's RFC and the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If a claimant can still perform his

past relevant work, a claimant is not disabled. *Id.* Fifth, the ALJ considers his assessment of a claimant's RFC in conjunction with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, he is disabled. *Id.* "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe*, 425 F.3d at 352.

As discussed above, the ALJ engaged in the five-step sequential analysis and ultimately concluded that Plaintiff was not disabled. (A.R. 22.) The ALJ first found that Plaintiff had not engaged in substantial gainful activity and second, that Plaintiff had a severe medically determinable impairment. (A.R. 17.) At step three, the ALJ concluded that Plaintiff's impairment did not equal a listed impairment; he therefore assessed Plaintiff's RFC and determined that Plaintiff had the RFC to perform a range of light work. (A.R. 18.) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (A.R. 21.) At step five, the ALJ relied upon the testimony of a vocational expert to conclude that an individual with Plaintiff's vocational profile and RFC was capable of performing a wide variety of work at a light, unskilled level. (A.R. 22.)

Plaintiff argues that the ALJ failed to properly analyze his testimony before finding him "not credible." (R. 15, Pl.'s Mot. at 10.) According to Plaintiff, the ALJ was required to consider the limiting effects of Plaintiff's severe impairments, including Plaintiff's statements about any limitations, because the ALJ found that Plaintiff had severe impairments. (*Id.* at 11.) Plaintiff concedes that the ALJ analyzed these impairments by considering the medical evidence, but appears to maintain that the ALJ violated SSR 96-7p because in considering Plaintiff's

testimony, the ALJ reached the conclusion that Plaintiff was deconditioned rather than apply SSR 96-7p. (*Id.*)

SSR 96-7p provides a two-step test for adjudicators to follow when evaluating a claimant's symptoms such as pain. SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484-85 (July 2, 1996). First, an ALJ "must consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 61 Fed. Reg. at 34484; *Scheck*, 357 F.3d at 701. Second, once "this has been established, the ALJ must further evaluate the 'intensity, persistence, and functionally limiting effects of the symptoms' in order to find whether those symptoms 'affect the individual's ability to do basic work activities.'" *Scheck*, 357 F.3d at 701 (quoting SSR 96-7p, 61 Fed. Reg. at 34485). If an "individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," SSR 96-7p, 61 Fed. Reg. at 34485, the ALJ must make a finding on the credibility of the statements based on a consideration of "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 61 Fed. Reg. at 34484; *see also Scheck*, 357 F.3d at 701.

In other words, if the objective medical evidence does not support a claimant's testimony about the severity of his pain, an ALJ must assess the claimant's credibility. When assessing a claimant's credibility, an ALJ must take into account not only the objective medical evidence,

but also the following factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of pain medication; (5) other treatment the individual has received; (6) any non-treatment measures the individual has used to relieve pain; and (7) functional restrictions due to pain. SSR 96-7p, 61 Fed. Reg. at 34485; *see also Scheck*, 357 F.3d at 703. Additionally, under SSR 96-7p an ALJ may consider his own "observations of the individual as part of the overall evaluation of the credibility of the individual's statements" in instances where an individual attends an administrative proceeding. SSR 96-7p, 61 Fed. Reg. at 34486.

Because an "ALJ is in the best position to determine the credibility of witnesses," this Court reviews that determination "deferentially," and will overturn a credibility determination "only if it is patently wrong." *Craft*, 539 F.3d at 678; *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (noting that an "ALJ's credibility determinations are entitled to special deference because the ALJ has the opportunity to observe the claimant testifying"). The credibility determination "must contain specific reasons for the credibility finding." *Craft*, 539 F.3d at 678. Additionally, an ALJ is precluded "from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). A reviewing court looks to "whether the ALJ's reasons for discrediting testimony are unreasonable or unsupported." *Schaaf*, 602 F.3d at 875.

Here, Plaintiff argues that because "the ALJ found severe impairments he was required to consider the limiting effects of symptoms from these impairments including claimant's statements about any limitations." (R. 15, Pl.'s Mot. at 11.) Plaintiff is correct that under SSR-

96-7p, after finding that a claimant has a medically determinable impairment, an ALJ must next consider the functionally limiting effects of the symptoms in order to determine whether those symptoms affect a claimant's ability to do basic work activities. A review of the ALJ's decision in this case demonstrates that the ALJ followed the analytical framework set out in SSR 96-7p before discrediting Plaintiff's "allegations concerning the frequency and duration of intense symptoms associated with his established impairments." (A.R. 20.)

The ALJ first determined that Plaintiff had underlying medically determinable impairments that could, and did, produce Plaintiff's pain and symptoms. (A.R. 17, 18.) While the ALJ's decision does not use the precise language found in SSR 96-7p, as would be ideal, the ALJ was clearly "convinced" that Plaintiff's "residual limitations" were associated with his shoulder and elbow injuries, the degenerative disc disease of the lumbar spine, and a depressive disorder associated with his general medical condition. (A.R. 17.) Indeed, because of Plaintiff's impairments, the ALJ concluded that Plaintiff was restricted in what he could do while at work. (A.R. 18.)

Next, the ALJ extensively discussed the objective medical evidence and took note of the progress Plaintiff made during his physical therapy sessions, the results of his 2007 MRI exam, the opinions of the doctors who examined Plaintiff, and the results of the range of motion testing. (A.R. 19.) Indeed, Plaintiff concedes that in his decision "[t]he ALJ does analyze the impairments by considering the medical evidence." (R. 15, Pl.'s Mot. at 11.) In reviewing Plaintiff's 2007 MRI, the ALJ commented that "there was no documentation of lower extremity spasm or numbness," and that Dr. McGivney had ruled out back surgery as a viable treatment for Plaintiff's back pain. (A.R. 19.) The ALJ's comments imply that the extent of Plaintiff's

reported symptoms relating to his back injury were not substantiated by the medical evidence. Again, while the ALJ's analysis could have been clearer, the ALJ nonetheless adhered to the analytical framework outlined in SSR 96-7p.

Finally, the ALJ moved on and assessed the credibility of Plaintiff's testimony. (A.R. 20.) In so doing, the ALJ took into account the following: that Plaintiff had continued to work for his former employer after he was injured despite ongoing and significant symptoms; that Plaintiff's daily activities consisted of cooking, cleaning, doing laundry, shopping, and taking daily walks; that Plaintiff had not been prescribed a home exercise program for his lower back; and that the ALJ observed Plaintiff to be deconditioned. (A.R. 18-20.) According to the ALJ, Plaintiff's deconditioning was consistent with Plaintiff's "testimony concerning his self-imposed restrictions upon sitting, standing, or walking." (*Id.*) The ALJ properly applied the analytical framework of SSR 96-7p in considering Plaintiff's daily activities, the treatment that Plaintiff received on his lower back, his own observations of Plaintiff from the hearing, and the fact that Plaintiff had worked after the onset of his injuries before discrediting Plaintiff's allegations as to the frequency and duration of symptoms associated with Plaintiff's impairments. *See Schmidt*, 395 F.3d at 746-47 (finding that ALJ's assessment of plaintiff's credibility did not run afoul of the analytical framework where ALJ considered and applied the factors to his credibility assessment); *Jones*, 623 F.3d at 1157 (ALJ's decision was not patently wrong where "the ALJ supported the credibility determination with references to the medical evidence, the opinions of the treating physicians, and [claimant's] daily activities.").

Furthermore, the Court finds that the ALJ's finding is supported by substantial evidence. First, the medical evidence establishes that Plaintiff has some limitations that the ALJ credited as

evidenced by the fact that he limited Plaintiff's range of work to light exertional work with no

bending, stooping, crouching, crawling, or kneeling, and no reaching above shoulder-level or

significantly away from the body. (A.R. 18.) Second, the record also establishes that none of

Plaintiff's doctor's restricted Plaintiff from work entirely, nor did they impose restrictions on the

amount of sitting, standing, or walking Plaintiff could do. *See Castile v. Astrue*, 617 F.3d 923,

930 (7th Cir. 2010) (upholding ALJ's credibility determination where ALJ relied upon objective

evidence and common sense to conclude that claimant's testimony was not entirely credible and

where none of claimant's doctors opined that claimant was unable to work). While the March

2008 functional assessment mentions that Plaintiff was limited to sitting for 60 minute durations

(with regular breaks), to standing for 30 minute durations, and to walking for three to four hours,

Plaintiff testified at the hearing that he could only sit for 10 to 20 minutes and that he could walk

anywhere from 30 to 45 minutes. (A.R. 70.) Additionally, the range of motion testing revealed

that while Plaintiff had limited range of motion in his shoulders and elbows, Plaintiff had only

slightly limited range of motion in his lumbar spine. (A.R. 571.)

In light of the discrepancy between the medical evidence and Plaintiff's testimony, the

ALJ reasonably discounted Plaintiff's testimony regarding his limitations as to sitting, walking,

and standing. *See Getch*, 539 F.3d at 483 (7th Cir. 2008) (ALJ reasonably discounted claimant's

testimony where there was a discrepancy between his reports and the medical reports and

therefore, ALJ's conclusion that claimant had exaggerated the impact his impairments had on his

ability to work was not patently wrong). While an ALJ may not discredit a claimant's testimony

about his pain and limitations solely because they are not supported by objective medical

evidence, discrepancies between the objective evidence and self-reports may suggest symptom

exaggeration. *See Jones*, 623 F.3d at 1157 (ALJ's decision that claimant exaggerated her allegations of disabling pain was not patently wrong where the objective medical evidence consistently revealed that claimant's condition was benign). Here, the medical evidence related to Plaintiff's lower back revealed only mild degenerative change, with no significant abnormalities, and at least one of Plaintiff's doctors did not believe there were enough concordant subjective complaints with objective medical findings to justify aggressive treatment on Plaintiff's back. (A.R. 518-19, 522.) Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence and therefore, the Court cannot say that the ALJ's decision as to Plaintiff's credibility was patently wrong.

## CONCLUSION

For the foregoing reasons, Plaintiff motion for summary judgment (R. 15) is DENIED. The Clerk of the Court is directed to enter a final judgment in favor of the defendant SSA.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** October 25, 2011